## CALVIN S. BLAIR, APPELLEE, V. KINGMAN IMPLEMENT COMPANY, APPELLANT.

### FILED SEPTEMBER 16, 1908. No. 15,285.

1. **Appeal: CONTRACT: REFORMATION: HARMLESS ERROR.** Where an employer admits that an employee named in a written contract was employed in the capacity of general manager, he cannot complain of a judgment reforming such written contract so as to express the character of such employment, on the ground that it was not intended to designate the capacity in the written contract. Such action, if erroneous, was error without prejudice.

2. **Reformation of Instruments: CONTRACT OF EMPLOYMENT: EVIDENCE.** Where a person who is president and manager of several allied corporations makes a contract employing a general manager for one of such corporations, but the written contract of employment is made in the name of another one of such corporations, the undisputed fact that said general manager rendered his services to and was paid by the former will support a finding of the district court reforming such writing so as to make it the contract of the former.

3. **Action: STIPULATION: ESTOPPEL.** Where a person who is the president and manager of several allied corporations makes a contract employing a general manager for one of such corporations, but the written contract of employment is made in the name of another one of such corporations, and the general manager brings a suit for wages against both corporations, a stipulation in such suit that such writing is the contract of the corporation for which the services were rendered, upon which stipulation the general manager dismisses the suit against the other corporation, estops the corporation for which the services were rendered from afterwards denying the same as against the said general manager.

4. **Appeal: WITNESSES: VERACITY.** Where no fact is disclosed inconsistent with the truth of the testimony of a witness, and there is nothing improbable nor unreasonable in his story, the question of his veracity is peculiarly one for the trial court, and its finding thereon is entitled to favorable consideration.

5. **Reformation of Instruments: EVIDENCE.** Where it is clearly established that in the negotiation of a contract between the plaintiff and the defendant's president, a clause of such proposed contract being under consideration, the said president assured the plaintiff that he understood it to have a specified meaning favorable to the plaintiff's claim, such contract will be reformed to express the meaning so given it.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed.*

*Smyth & Smith,* for appellant.

*T. J. Mahoney* and *J. A. C. Kennedy, contra.*

CALKINS, C.

This was an action in equity to reform a written contract of employment. The defendant, the Kingman Implement Company of Omaha, was one of several corporations whose names commenced with the name "Kingman," and whose headquarters were in Peoria, Illinois. Among the others were Kingman & Company and the Kingman Plow Company. Martin Kingman was the founder of these corporations and the president of each of them. The several corporations were in law distinct, but the general management was in the hands of Mr. Martin Kingman, and they were treated as if they were all branches of one house located at Peoria. In April, 1900, the plaintiff came to Omaha as manager of the defendant company. His contract of employment was in writing, for the making of which a printed blank prepared for the use of Kingman & Company was used, and it seems to have been made in the name of the latter company, although plaintiff was thereby employed to manage the business of the Kingman Implement Company of Omaha. The printed blank contained the following clause: "It is fully understood and agreed that if the said party of the second part is unable to do the work assigned to him in a manner satisfactory to said Kingman & Company, *or should there be a failure or partial failure or destruction of crops, financial disturbance, fires, strikes or otherwise that would disarrange the business of the party of the first part,* they have option at any time of terminating this agreement." In November, 1902, the term of the above contract having expired, a new contract was negotiated between the plaintiff and Mr. Kingman acting

for the defendant, by which the plaintiff was employed for three years from the 1st day of November, 1902, at a salary of $2,600 for the first year, $2,800 for the second year, and $3,000 for the third year. The new contract was thereafter prepared upon the same printed blank, and signed by Mr. Kingman as president and by the plaintiff. The words in italics were erased from the clause above quoted in both contracts, and the words "by giving the party of the second part ten days' notice" were inserted at the end thereof.

On December 1, 1903, Mr. Kingman as president, and in the name of the Kingman Plow Company wrote a letter to the plaintiff, whom he addressed as manager of the Kingman Implement Company, discharging him, and this letter was on December 3 delivered to the plaintiff by a Mr. Hatfield, who had been employed by the defendant to succeed the plaintiff. On January 6, 1904, the plaintiff began an action in the county court to recover an instalment of salary which was due him if the contract was still in force, and this action was appealed to the district court in November, 1904. The district court having held that the contract gave to the employer the absolute right of discharge, and that the plaintiff was not entitled in that suit to any reformation of the contract, said court, upon the application of the plaintiff, stayed proceedings in said suit to enable the plaintiff to bring an action for the reformation of the contract, and this action was thereupon begun. A trial being had to the court, it was found that the contract in question did not correctly state the real contract between the parties in three particulars: First, in failing to state the capacity in which the plaintiff was employed; second, in failing to state the name of the defendant as the employing party; and, third, in failing to state the true agreement in respect to the right of the defendant to terminate the contract. Judgment was accordingly rendered reforming said contract so as to make the defendant party of the first part thereto, and to show that the plaintiff was employed as general man-

ager; while the clause of the contract heretofore quoted was made to read as follows: "It is fully understood and agreed that, if through sickness or accident the party of the second part is disabled from attending to the discharge of the duties of this employment, the said Kingman Implement Company have the option at any time to terminate this agreement by giving the said party of the second part ten days' notice." From this judgment the defendant appeals.

1. The defendant complains of that part of the decree which reforms the contract so as to describe the plaintiff as general manager, upon the ground, not that plaintiff was not in fact to be such general manager, for that is admitted, but that such portion of the agreement was not intended to be expressed in the written contract, and that therefore there was no mistake made in leaving it out. Admitting this argument to be valid, and that the facts did not present a case calling for a reformation of the contract in this particular, we cannot see how the defendant is in any manner prejudiced thereby. Should the capacity in which the plaintiff was employed become material in the action now pending or any other action brought upon the contract as reformed, such capacity will, it is true, appear from the contract; but it will appear just as the defendant now admits and would then be compelled to concede the fact to be. The principle that this court will not reverse a judgment of the court below for errors not prejudicial to the party complaining is too well settled to need the citation of authorities.

2. While characterizing the matter as unimportant, the defendant insists that there is no evidence that the contract was really intended to be in the name of the defendant, the Kingman Implement Company of Omaha, and that the use of the name of Kingman & Company was a mistake. It is argued that, when the bargain was made, nothing was said about the name of the company. The proof is that Mr. Kingman said to the plaintiff: "We want you to stay with us." By the use of the words "we"

and "us" Kingman meant some one of the corporations which he represented. As the plaintiff had been for two years past and thereafter continued for more than one year to work for and receive his compensation from the defendant company, there is no other conclusion possible than that such company was meant. Shortly after the making of the contract, in a letter addressed to the plaintiff in relation thereto, he was described as manager of the Kingman Implement Company; the letter being signed Kingman & Company, by Mr. Schimpff, who seems to have been secretary, as Mr. Kingman was president, of all the companies. The letter discharging the plaintiff was addressed to him as manager of the Kingman Implement Company, and signed Kingman Plow Company by Martin Kingman, president. The names of the allied corporations seem to have been used indiscriminately and without much reference to which corporation the business in hand concerned. We think the evidence amply sufficient to support the finding of the district court that the contract was really intended to be that of the defendant company, and that the use of the name of Kingman & Company instead was a mistake.

3. This is not the only reason for sustaining this finding of the district court. When the plaintiff brought his action in the county court, it was against both Kingman & Company and this defendant, and it was there stipulated that the contract was that of this defendant. Upon that stipulation the action was dismissed as to Kingman & Company. There were in these facts all the elements of an estoppel; the deliberate act of the defendant stipulating that it was a party, and the act of the plaintiff in dismissing his action against the other defendant made in reliance thereupon and to his prejudice. These facts were pleaded, and the district court rightly held that they estopped the defendant from denying that it was a proper party to such contract.

4. Martin Kingman died in December, 1904, before this action was begun, and without the taking of his testimony

as to what was said between him and the plaintiff at the
time the contract in question was negotiated. The plain-
tiff's claim for relief, therefore, rests upon his own state-
ment as to what occurred at that time. The defendant
seeks to discredit the plaintiff's testimony by the facts,
first, that he signed the contract in the condition in
which it existed at the time of the commencement of the
action; second, that when discharged he did not men-
tion to his successor the fact that he had such a contract
as he now claims; third, that he did not set up its exist-
ence in his letter answering the letter of Mr. Kingman
discharging him; fourth, that he did not discuss the mat-
ter in an interview afterwards had between him and Mr.
Kingman in the presence of a Mr. Taylor; and, fifth, that
he did not set forth the facts in his first petition as they
were afterwards testified to by him. To give even an ab-
stract of the testimony on these several points would
unduly extend this opinion. It is sufficient to say that
none of the objections is conclusive, and none of the cir-
cumstances referred to necessarily inconsistent with the
existence of the facts as testified to by the plaintiff. The
first objection, that he signed the contract, would be fatal
in most actions for a reformation; the second, that he
did not explain to his successor, has no weight; while
the fact that he did not go into the details in his letter to
Mr. Kingman regarding his discharge does not seem to
us important. In such letter he certainly does not admit
that Mr. Kingman had a right to discharge him, for he
says: "Your proposition is simply absurd. I will insist
on a square deal and hope it will be granted without un-
necessary delay." It does not appear that at the inter-
view at which Mr. Taylor was present the subject of the
terms of their contract was discussed, and the failure of
the plaintiff to mention the details thereof does not tend
to contradict his evidence. The discrepancy in his peti-
tions is sufficiently explained by the testimony of his at-
torney, and the question of his veracity was therefore
peculiarly one for the trial judge, who saw and heard him

testify, and had an opportunity to observe his appearance and demeanor, which is denied to us. There is nothing in the case which marks his story as improbable or unreasonable, and we are not inclined to disturb the finding of the district court upon the question of his veracity.

5. This brings us to the question whether, assuming the plaintiff's testimony to be true, it clearly and satisfactorily established his right to a reformation of the contract. The negotiations for a contract seem to have been had in Mr. Kingman's room at the Paxton hotel in Omaha. At that time the plaintiff had been acting as manager for the defendant for some two years under a contract containing identically the same clause as did the one we are considering. Mr. Kingman asked the plaintiff if he intended to stay with the company, told him that he wished him to do so, and that he wanted to make a contract for five years. The plaintiff objected to this, and said he preferred to make a contract for one year. After a discussion of the reasons pro and con, Mr. Kingman proposed to make a contract for three years, $2,600 for the first, $2,800 for the second, and $3,000 for the third. The plaintiff assented to this, and Mr. Kingman said: "I have not any contracts with me, I will prepare one and send it to you." The plaintiff then told Mr. Kingman that he wanted a straight contract, and Mr. Kingman asking him, "What do you mean by a straight contract?" he replied, "I mean an unqualified contract for three years." Mr. Kingman said: "That is what we shall have. That is what we have." This the plaintiff did not agree to, and he told Mr. Kingman that his understanding was, under the existing contract, that he was on trial; that, if he succeeded, all right, and, if he did not, Mr. Kingman was at liberty to terminate the contract. But Mr. Kingman demurred that this was not the meaning of the contract, and, in substance, said that his understanding of the meaning was that, if the plaintiff became unable on account of sickness or injury to do the business of the defendant to their satisfaction, he was to have

the right to discharge him. Upon this understanding the contract was signed, containing the stipulation that, if "the said party of the second part is unable to do the work assigned to him in a manner satisfactory to Kingman & Company, they have the option at any time to terminate this agreement by giving the party of the second part ten days' notice."

This presents the question whether a party to a contract who signs the same upon the assurance of the other party that he understands the provisions of the contract to have a certain specified meaning may, in case the contract cannot be so construed, have an action in equity to reform the same so that it shall clearly express the meaning specified. It is said by Mr. Pomeroy: "If, on the other hand, after making an agreement, in the process of reducing it to a written form, the instrument, *by means of a mistake of law,* fails to express the contract which the parties actually entered into, equity will interfere with the appropriate relief, either by way of defense to its enforcement, or by cancelation, or by reformation, to the same extent as if the failure of the writing to express the real contract was caused by mistake of fact. In this instance there is no mistake as to the legal import of *the contract actually made,* but the mistake of law prevents the real contract from being embodied in the written instrument." 2 Pomeroy, Equity Jurisprudence (3d ed.), sec. 845. The same author (sec. 847), in discussing a mistake of law accompanied with inequitable conduct of the other party says: "Whatever be the effect of a mistake pure and simple, there is no doubt that equitable relief, affirmative or defensive, will be granted when the ignorance or misapprehension of a party concerning the legal effect of a transaction in which he engages, or concerning his own legal rights which are to be affected, is induced, procured, aided or accompanied by inequitable conduct of the other parties. It is not necessary that such inequitable conduct should be intentionally misleading, much less that it should be actual fraud; it is enough that the misconcep-

tion of the law was the result of, or even aided or accompanied by, incorrect or misleading statements or acts of the other party." This principle is recognized by section 341 of the code, which provides that, "When the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it." In this case the language of the contract was not that, if the company should become dissatisfied with the services rendered by the plaintiff, they might terminate the contract. The language was that, if he was unable to perform the duties to their satisfaction, they might so terminate the contract. It might be argued that this implied a change in his ability to perform rather than in the disposition of the company to be satisfied, and there might easily have existed a different understanding as to what was actually meant. If Mr. Kingman believed the contract meant if the plaintiff became unable from illness or accident, then there was, assuming the construction of the contract by the district court in the law action to have been correct, a mutual mistake. If, on the other hand, he did not so understand the contract, but induced the plaintiff to sign it by the assurance that that was his construction thereof, then he was guilty of inequitable conduct, which should give the plaintiff the right to his relief. We do not think the case would be altered if the plaintiff believed that the clause gave the company the right to discharge him at its own option, if he was induced to sign the same, by the assurance of Mr. Kingman that he did not so construe it. The case of *Cathcart v. Robinson,* 5 Pet. (U. S.) *264, *276, is, we think, in point. There an action was brought to enforce specific performance of a contract in the form of a bond for the conveyance of real estate. The defendant sought reformation, alleging that at the time of the execution of the contract he was under the impression, sanctioned by the conduct of the plaintiff, that at any time before its completion he might release himself by paying a penalty

of $1,000. In that case it appears that Mr. Cathcart at the time of the execution of the bond insisted on reducing the penalty to $1,000, giving as a reason therefor that he might be enabled to relieve himself from it by the payment of a sum he thought within his resources. The obligee, without hinting that the object would not be obtained by the condition, assented to it, and the agreement was signed. The court, by Marshall, C. J., say: "If this be a correct view of the transaction, it is not simply an instrument executed by a person who mistakes its legal effect, as it would have been, had it been prepared with a penalty of $1,000, and silently executed by Cathcart in the full conviction that it left him the option to perform the contract or to pay the penalty; it is something more. The assent of Robinson to this reduction of the penalty, when demanded, avowedly for the purpose of enabling Cathcart to terminate his obligation by paying it, is doing something active on his part to give effect to the mistake, and turn it to his advantage. It is, in some measure, co-operating with Cathcart in the imposition he was practicing on himself."

We think the above principle should govern the disposition of this case, and that the contract should be reformed to express the meaning which Mr. Kingman assured the plaintiff he placed upon it. We therefore recommend that the judgment of the district court be affirmed.

FAWCETT, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.